**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AARON COHEN, on behalf of himself and all others similarly situated,<br><br>                          Plaintiff,<br><br>        -against-<br><br>DITECH FINANCIAL LLC, ROSICKI, ROSICKI & ASSOCIATES PC<br><br>                       Defendants. | No. 2:15-cv-6828 |

## DECLARATION OF JUSTIN ANGELO IN SUPPORT OF MOTION TO DISMISS

       I, JUSTIN ANGELO, am over the age of eighteen, have personal knowledge of, and am competent to testify to, the facts set forth below, and declare the following to be true and correct pursuant to 28 U.S.C. Section 1746:

       1.    I am a member of the New York Bar and of counsel for the firm Ballard Spahr, LLP, attorneys for Defendant, Ditech Financial LLC f/k/a Green Tree Servicing ("Green Tree") in this action.  As counsel for Green Tree, I am familiar with this action.

       2.    I submit this Declaration in connection with Green Tree's motion to dismiss the Complaint with prejudice.  The purpose of this Declaration is to submit to the Court certain documents referred in our accompanying Memorandum of Law.  The documents referenced and attached hereto are integral to Plaintiff's Complaint, and were a material part of its allegations.

       3.    On or about March 12, 2015, Green Tree commenced the foreclosure action entitled *Green Tree Servicing LLC v. Aaron Cohen, et. al*, in the Supreme Court of New York, Rockland County, Index No.: 031030-2015 (the "Foreclosure Action").  A true and correct copy of

the foreclosure complaint and summons that our office pulled from NYSCEF is attached as Exhibit "A".

4.      That same day, Green Tree filed the certificate of merit required by NYCPLR § 3012-b.  A true and correct copy of the certificate of merit that our office pulled from NYSCEF is attached as Exhibit "B".

5.      On or about March 27, 2015, Green Tree filed the specialized request for judicial intervention and addendum (collectively the "RJI") required in residential mortgage foreclosure cases.  A true and correct copy of the RJI is attached as Exhibit "C".

I DECLARE under penalty of perjury that the contents of the foregoing Declaration are true and correct.

Dated:  New York, NY
        April 7, 2016

_____
JUSTIN ANGELO

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
----------------------------------------------------------------------x

GREEN TREE SERVICING LLC

Plaintiff,

-against-

AARON COHEN; EMILY COHEN; BEAVER DAM
TRUST; NATIONAL CITY BANK; "JOHN DOES" AND
"JANE DOES", said names being fictitious, parties intended
being possible tenants or occupants of premises and
corporations, other entities or persons who have, claim, or
may claim, a lien against, or other interest in, the premises,

Defendant(s).
----------------------------------------------------------------------x

Index No.

D/O/F:

**SUMMONS**

Premises Address:
14 BEAVER DAM ROAD
POMONA, NY 10970

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy
of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance
on the Plaintiff's Attorneys within twenty (20) days after the service of this Summons, exclusive of the
day of service, where service is made by delivery upon you personally within the State, or within thirty
(30) days after completion of service where service is made in any other manner, and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief demanded in
the complaint.

### NOTICE
### YOU ARE IN DANGER OF LOSING YOUR HOME
**If you do not respond to this summons and complaint by serving a copy of the answer on the
attorney for the mortgage company who filed this foreclosure proceeding against you and filing
the answer with the court, a default judgment may be entered and you can lose your home.
Speak to an attorney or go to the court where your case is pending for further information on
how to answer the summons and protect your property.
Sending a payment to your mortgage company will not stop this foreclosure action.
YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR
THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE
COURT.**

### PLEASE BE AWARE:

(1) that debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C.
§ 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts,
including, but not limited to:
      (i) the use or threat of violence;
      (ii) the use of obscene or profane language; and
      (iii) repeated phone calls made with the intent to annoy, abuse, or harass.
(2) Debt collectors must also provide the following written notice:
"If a creditor or debt collector receives a money judgment against you in court, state and federal laws
may prevent the following types of income from being taken to pay the debt:

1. Supplemental security income, (SSI);
2. Social security;
3. Public assistance (welfare);
4. Spousal support, maintenance (alimony) or child support;
5. Unemployment benefits;
6. Disability benefits;
7. Workers' compensation benefits;
8. Public or private pensions;
9. Veterans' benefits;
10. Federal student loans, federal student grants, and federal work study funds; and
11. Ninety percent of your wages or salary earned in the last sixty days."

The following notice is intended only for those defendants who are owners of the premises sought to be foreclosed or who are liable upon the debt for which the mortgage stands as security.

**YOU ARE HEREBY PUT ON NOTICE THAT WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The amount of the Debt: $545,425.53 consisting of principal balance of $339,486.30 plus interest of $107,047.83, escrow/impound shortages or credits of $97,000.80, late charges of $165.60; Broker's Price Opinion, inspection and miscellaneous charges of $0.00; attorney fee $1,450.00 and title search $275.00.  Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive the check, in which event we will inform you.

The name of the creditor to whom the debt is owed: GREEN TREE SERVICING LLC.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after receipt hereof, the debt will be assumed to be valid by Rosicki, Rosicki & Associates P.C.

If you notify Rosicki, Rosicki & Associates P.C. in writing within thirty (30) days after your receipt hereof that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you by Rosicki, Rosicki & Associates P.C.

Upon your written request within 30 days after receipt of this notice, Rosicki, Rosicki & Associates P.C. will provide you with the name and address of the original creditor if different from the current creditor.

Note: Your time to respond to the summons and complaint differs from your time to dispute the validity of the debt or to request the name and address of the original creditor.  Although you have as few as 20 days to respond to the summons and complaint, depending on the manner of service, you still have 30 days from receipt of this summons to dispute the validity of the debt and to request the name and address of the original creditor.

TO THE DEFENDANTS, except AARON COHEN: The Plaintiff makes no personal claim against you in this action.

TO THE DEFENDANTS: AARON COHEN:  If you have obtained an order of discharge from the Bankruptcy court, which includes this debt, and you have not reaffirmed your liability for this debt, this law suit is not alleging that you have any personal liability for this debt and does not seek a money judgment against you. Even if a discharge has been obtained, this lawsuit to foreclose the mortgage will continue and we will seek a judgment authorizing the sale of the mortgaged premises.

Dated: March 11, 2015

Shanna J. Black, Esq.
**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
------------------------------------------------------------------------x

GREEN TREE SERVICING LLC                                          Index No.

                                            Plaintiff,           D/O/F:

                     -against-                                   **COMPLAINT**

AARON COHEN; EMILY COHEN; BEAVER DAM                             Premises Address:
TRUST; NATIONAL CITY BANK; "JOHN DOES" and                      14 BEAVER DAM ROAD
"JANE DOES", said names being fictitious, parties intended      POMONA, NY 10970
being possible tenants or occupants of premises and
corporations, other entities or persons who have, claim, or
may claim, a lien against, or other interest in, the premises,
                                            Defendant(s).

------------------------------------------------------------------------x

Plaintiff, by its attorney, ROSICKI, ROSICKI & ASSOCIATES, P.C., complaining of the Defendant(s) alleges, upon information and belief as follows:

1.      At all times hereinafter mentioned, plaintiff GREEN TREE SERVICING LLC was and still is duly organized and existing under the laws of the state of Delaware.

2.      At all times hereinafter mentioned, the defendants were, and still are, residents, corporations and/or bodies politics, duly authorized to reside and/or exist in and under the laws of New York State.

3.      On or about August 11, 2005, AARON COHEN executed and delivered to STERLING EMPIRE FUNDING ASSOCIATES, LTD., a note bearing date that day, whereby AARON COHEN covenanted and agreed to pay the sum of $359,650.00, with interest on the unpaid balance thereof, at the rate of 5.62500 percent per annum, to be computed from the date of said note, by payments of $2,070.35 on October 1, 2005 and thereafter in payments of $2,070.35 on the like date of each subsequent month, until said note is fully paid, except that the final payment of principal and interest remaining due, if not sooner paid, shall become due and payable on September 1, 2035. See note attached as an Exhibit hereto.

4.      As collateral security for the payment of said indebtedness, the aforesaid defendant(s) AARON COHEN and EMILY COHEN, also executed, acknowledged and delivered to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR STERLING EMPIRE FUNDING ASSOCIATES, LTD., ITS SUCCESSORS AND/OR ASSIGNS, a mortgage dated August 11, 2005 and recorded in Instrument No. 2005-00045242 in the County of Rockland on August 25, 2005.   The mortgage tax was duly paid. Thereafter said mortgage was assigned to BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP by assignment of mortgage bearing date June 1, 2010 and recorded under Instrument No. 2010-00020560 in the County of Rockland on June 9, 2010. Thereafter said mortgage was assigned to GREEN TREE SERVICING LLC by assignment of mortgage bearing date June 10, 2013 and recorded under Instrument No. 2014-00010014 in the County of Rockland on April 16, 2014.

Said mortgaged premises being known as and by street address:
14 BEAVER DAM ROAD, POMONA, NY 10970 bearing tax map designation:

Dist:    Section: 32.16  Block:  2  Lot(s):  21

which premises are more fully described in Schedule "A," annexed hereto and made a part hereof.

5.     Plaintiff

(a)     is holder of the subject note and mortgage, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note; and

(b)     has complied with all the provisions of section five hundred ninety-five-a of the Banking Law and any rules and regulations promulgated there under, section six-L or six-M of the Banking Law, and

(c)     is in compliance with sending the ninety (90) day notices as required by RPAPL §1304.

(d)     is in compliance with RPAPL §1306, if applicable. The tracking number provided by the New York State Department of Financial Services for the reporting is NYS3648682.

6.     Said premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

7.     That the Mortgagors, their successors, assigns and/or transferees, have failed to comply with the terms and conditions of said above named instrument[s] by failing or omitting to pay the installment which became due and payable as of September 1, 2009 and also by failing or omitting to pay the installment which became due and payable each and every month thereafter, to the date hereof, although duly demanded.

8.     The total monthly payment due as of default date to plaintiff is $2,070.35.

9.     That the terms of the above described instruments provide: (1) that the whole of said principal sum and interest shall become due at the option of the Mortgagee after default in the payment of any installment of principal or of interest; (2) that upon any default the Mortgagor will pay to the Mortgagee any sums paid for taxes, charges, assessments, and insurance premiums upon said mortgaged premises; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

10.     Pursuant to the terms of said instrument[s] notice of default has been duly given to the defendants AARON COHEN and EMILY COHEN if required, and the period to cure, if any, has elapsed and by reason thereof, Plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

11.     That the balance of principal due upon said note and mortgage as of the date of said default and as of the time of this Complaint is $339,486.30 plus interest from August 1st, 2009.

12.     That in order to protect its security, plaintiff may be compelled during the pendency of this action to make repairs to, board, secure, protect and maintain the premises, to pay taxes, assessments, water rates, sewer rentals, insurance premiums, mortgage insurance premiums, if there be any, and other charges affecting the premises, and the plaintiff requests that any sum so paid be added, including legal fees to the sum otherwise due, with interest as provided in the aforesaid instruments, and be deemed secured by said instrument[s] and adjudged a valid lien on the premises hereinabove described.

13.     That the plaintiff requests that in the event this action proceeds to Judgment of Foreclosure and Sale, said premises be sold subject to covenants, restrictions and easements, prior mortgages and liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

14.     That a prior action was commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument[s] by filing a summons & complaint in the office of the clerk of Rockland county, on June 3, 2010, bearing index #SU-2010-005469. Said action has been discontinued.

15.     That the defendants all have or claim to have some interest in or lien[s] upon the said mortgaged premises, or some part thereof, which interest or lien[s], if any, has [have] accrued subsequently to the lien[s] of the said mortgage[s] or was in express terms or by law made subject thereto, or has [have] been duly subordinated thereunto.

16.     That the defendants "JOHN DOES" and "JANE DOES" may be tenants or may be in possession of the aforementioned premises, or may be corporations, other entities or persons who claim, or may claim, a lien against the premises.

17.     That the basis for naming any political subdivision, governmental agency or similar body, or the holder of a security interest in either personal property or real property, if any, is set forth as Schedule "B."

WHEREFORE, plaintiff demands judgment that the defendants and all persons claiming under them subsequent to the filing of the Notice of Pendency of this action in the County of Rockland may be forever barred and foreclosed from all right, title, claim, lien and equity of redemption in said mortgaged premises, and each and every part thereof; except the right of the United States of America and its political subdivision, if it or they be a party to this action, to redeem as provided for in the applicable laws; that the said premises may be decreed to be sold according to law; that the amount of principal due the plaintiff on said note and mortgage may be adjudged in the sum of $339,486.30 plus interest from August 1st, 2009, and that from the money arising from the sale, plaintiff be paid the amount of $339,486.30 principal due it on said note and mortgage with interest and late charges that may be due and owing to the time of such payment plus the expenses of sale and the costs and expenses of this action, together with any sum which may be paid by the plaintiff for repairs to, boarding, securing, protecting and maintaining the premises, taxes, charges, assessments and insurance premiums upon said mortgaged premises, with appropriate interest thereon so far as such moneys properly applicable thereto will pay the same; that the defendants AARON COHEN be adjudged to pay any deficiency which may remain; that a Receiver, upon plaintiff's application therefore, be forthwith appointed for said mortgaged premises for the benefit of the plaintiff, with all powers of receivers in such actions, and that the plaintiff have such other and further relief as may be just and proper in the premises, together with attorney's fees, costs and disbursements of this action.

Dated: March 11, 2015

Shanna J. Black, Esq.
**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585

All that certain plot, pieces or parcel of land situate, lying and being in the Village of Pomona, Town of Ramapo, County of Rockland and State of New York, known and designated as Lot 10 in Block A as Shown on a certain map entitled "Amended Subdivision of Property for Gegerson Heights- Dennis Hills, Village of Pomona, Rockland County, New York" made by Atzl & Scatassa Associates, P.C., dated March 28, 1974 and last revised March 8, 1975, which map was filed in the Rockland County Clerk's Office on June 18, 1975 in Book 88 of Maps at Page 67-68 as Map #4638.

**SCHEDULE B**

---

AARON COHEN is named herein as party defendant(s) because they are obligors on the note and they mortgaged their interest.

EMILY COHEN is named herein as party defendant(s) because they mortgaged their interest.

BEAVER DAM TRUST is named herein as necessary party defendants because they acquired ownership interests in the subject premises by deed dated June 17, 2011 and recorded on June 20, 2011 in Instrument No. 2011-00022151. That their interest in the said premises was acquired after Plaintiff's mortgage was recorded, therefore Plaintiff's mortgage has priority over said defendants' interest.

NATIONAL CITY BANK is named herein as a party defendant because it has or claims to have a lien against the subject premises, which is subordinate to the Plaintiff's mortgage.

(Page 33 of 47)

Paul Piperato, County Clerk
1 South Main St Ste 100
New City, NY 10956
(845) 638-5221

## Rockland County Clerk Recording Cover Sheet

Received From :
CAPITAL ABSTRACT CO INC
3854 FLATLANDS AVE
BROOKLYN, NY 11234

Return To :
NCB CLS BRECKSVILLE LOCS
LOCATOR 7120
PO BOX 5570
CLEVELAND, OH 44101

**First GRANTOR**
COHEN, AARON

**First GRANTEE**
NATIONAL CITY BANK

Index Type : Land Records

Instr Number : 2006-00038060

Book :                Page :

Type of Instrument : Mortgage
Type of Transaction : Mtg Type B

Recording Fee :          $45.00

Recording Pages :           6

The Property affected by this instrument is situated in Ramapo, in the County of Rockland, New York

### Mortgage Taxes

| | |
|---|---|
| Property Located : | Ramapo |
| Serial Number : | CX5178 |
| Mortgage Amount : | $350,000.00 |

| | |
|---|---|
| Basic Tax : | $1,750.00 |
| Local Tax : | $0.00 |
| Additional Tax : | $1,020.00 |
| Transportation Auth Tax : | $875.00 |
| SONYMA : | $0.00 |
| County Tax : | $875.00 |
| Total : | $4,520.00 |
| | |
| Total Fees : | $4,565.00 |

State of New York

County of Rockland

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York.

On (Recorded Date) : 07/18/2006

At (Recorded Time) : 11:00:28 AM

Doc ID - 010728150006

Paul Piperato, County Clerk



This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: NAM  Printed On : 07/19/2006   At : 9:37:14AM

Premises improved by
a one or two family
dwelling

When recorded return to:

NCB, CLS BRECKSVILLE
LOC8, LOCATOR 7120
P.O. BOX 5570
CLEVELAND, OH 44101

———— State of New York ———— · · · · ———— Space Above This Line For Recording Data ————

## CREDIT LINE MORTGAGE
(With Future Advance Clause)

This is a Credit Line Mortgage as defined in New York Real Property Law section 281. The mortgage contemplates that Lender and Mortgagor will enter into a series of advances or advances, payments and readvances. The aggregate amount at any time outstanding will be limited as specified in this Security Instrument.

1. DATE AND PARTIES. The date of this Mortgage (Security Instrument) is .......June 5, 2006....................... and the parties, their addresses and tax identification numbers, if required, are as follows:

MORTGAGOR:

AARON COHEN and Cindy Cohen

14 BEAVERDAM RD POMONA, New York 10970

Section:
32.16
Block:
2
Lot:
21

[X] If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

LENDER:

NATIONAL CITY BANK
P.O. Box 5570
Cleveland, OH 44101

2. CONVEYANCE. For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys and mortgages to Lender, with power of sale, the following described property:

SEE ATTACHED EXHIBIT

Premises improved by
a one or two family
dwelling

The property is located in ..Rockland........................... at .........................................
                                      (County)
..14 BEAVER DAM RD.............. POMONA ................. New York ... 10970 ......
         (Address)                       (City)                              (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. MAXIMUM OBLIGATION LIMIT. The total principal amount secured by this Security Instrument at any one time shall not exceed $ ..350,000.00......................... This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. (You must specifically identify the debt(s) secured and you should include the final maturity date of such debt(s).)
   Maturity Date: 6/06/2036

Pursuant to the terms of one or more of the note(s), contract(s), or guaranty(s), the parties reasonably contemplate entering into a series of advances, payments, advances, and readvances.

NEW YORK - CREDIT LINE MORTGAGE (NOT FOR FNMA, FHMC, FHA OR VA USE)
©1993, 1997 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTGNY 1/14/99

(page 1 of 4)

B-RAH 5

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument if those advances are made within 20 years from the date of the recording of this Security Instrument. Advances made more than 20 years after this Security Instrument was recorded are also secured, but may not be secured to the same extent as advances made within 20 years of recording. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All other obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

5. **MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and may reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

© 1996, 1991 Bankers Systems, Inc., St. Cloud, MN  Form OCP-REMTG-NY 7/14/99

(page 2 of 4)

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

6.  **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

7.  **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

8.  **DEFAULT.** Mortgagor will be in default if any of the following occur:

    **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

    **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

    **Property.** Any action or inaction by the Borrower or Mortgagor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

    **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9.  **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

    At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or any time thereafter. If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder.

    The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and the Lender's security interest. These expenses are payable on demand and will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees not in excess of 15% of the unpaid debt if the loan is referred for collection to an attorney who is not a salaried employee of the Lender, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material", "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

    Mortgagor represents, warrants and agrees that:
    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action

*(page 3 of 4)*

© 1995, 1997 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-NY 9/14/99

or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

16. **AGREEMENTS ABOUT NEW YORK LIEN LAW.** If any part of the secured debt is intended or represented to be used for improvements to the Property, Mortgagor will receive all amounts lent to Mortgagor by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law.

17. **MORTGAGE TAX.**
  ☐ The Property covered by this Mortgage is or will be improved by a one or two family residence or dwelling.
  ☐ The Property covered by this Mortgage ☐ is ☐ is not real property improved by one or more structures containing in the aggregate not more than six residential dwelling units, each with separate cooking facilities.

18. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

19. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

20. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
  [Check all applicable boxes]
  ☐ Assignment of Leases and Rents ☐ Other ...........................................................

21. ☐ **ADDITIONAL TERMS.**

Prepared by:
ROSE BUCCINI, National City Bank
6750 Miller Road, Brecksville, OH 44141

**DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) AARON COHEN                    (Date)        (Signature)                          (Date)

(Signature)                                (Date)        (Signature)                          (Date)

**ACKNOWLEDGMENT:**
STATE OF .... New York ....., COUNTY OF .... King ..................... } ss.
On this .... day of .... June .... in the year 2006 .... before me, the undersigned, personally appeared .... Aaron Cohen & Emily Cohen ....................................
...........................................................................................................
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My commission expires:

SARAH TYBERG
Notary Public, State of New York
N.O. 01TY6004293
Qualified in Kings County
Commission Expires June 10, 2007

Notary Public - State of New York

©1995, 1997 Bankers Systems Inc., St. Cloud, MN Form OCP-REMTG-NY 9/14/99                              (page 4 of 4)

(Page 38 of 47)

## DESCRIPTION OF THE LAND

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Village of Pomona, Town of Ramapo, County of Rockland and State of New York, known and designated as Lot 10 in Block A as Shown on a certain map entitled " Amended Subdivision of Property for Gegerson Heights- Dennis Hills, Village of Pomona, Rockland County, New York" made by Atzl & Scatasse Associates, P.C , dated March 28, 1974 and last revised March 8, 1975, which map was filed in the Rockland County Clerk's Office on June 18, 1975 In Book 88 of Maps at Page 67-68 as Map#4638.

For Conveyancing only, not for policy:
SAID PREMISES known as 14 Beaver Dam Road, Pomona, New York.

MIN: ▮▮▮▮▮▮▮                **NOTE**      Loan Number: ▮▮▮▮▮▮▮

AUGUST 11, 2005                          BRONX                    NEW YORK
    [Date]                              [City]                      [State]

14 BEAVER DAM ROAD, POMONA, NEW YORK 10970
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $359,650.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is STERLING EMPIRE FUNDING ASSOCIATES, LTD., A NEW YORK CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on OCTOBER 1 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on SEPTEMBER 1, 2035      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  2307 EASTCHESTER ROAD, BRONX, NEW YORK 10469
or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $2,070.35

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Borrower Initials: _____  _____  _____  _____

▮▮ **610** ▮▮▮▮▮▮▮▮▮▮▮  **N   001   001**



### 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

**(A)  Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be         2.000 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

### 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Borrower Initials: _____   _____   _____   _____   _____

NEW YORK FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3233 1/01                                       Page 2 of 3

*DocMagic eFORMS* 800-649-1362
*www.docmagic.com*



## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
AARON COHEN                -Borrower                                              -Borrower

_____ (Seal)                    _____ (Seal)
                           -Borrower                                             -Borrower

_____ (Seal)                    _____ (Seal)
                           -Borrower                                             -Borrower

PAY TO THE ORDER OF   Countrywide Document Custody Services, a division of Treasury Bank, N.A.
WITHOUT RECOURSE
STERLING EMPIRE FUNDING ASSOCIATES, LTD.,
A NEW YORK CORPORATION
INDEPENDENCE COMMUNITY BANK, ATTORNEY IN FACT
BY: _____                                    *[Sign Original Only]*

FRANCESCA A. BADOLATO
ASSISTANT SECRETARY

NEW YORK FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3233 1/01                         Page 3 of 3              DocMagic *€Forms* 800-649-1362
                                                               www.docmagic.com

# ALLONGE

**LOAN #:** ███████████

**Borrower(s):**  AARON COHEN

**Property Address:**  14 BEAVER DAM ROAD, POMONA, NEW YORK 10970

**Principal Balance:**  $359,650.00

**Loan Date:**  AUGUST 11, 2005

### PAY TO THE ORDER OF

COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, N.A.

**Without Recourse**

Company Name: STERLING EMPIRE FUNDING ASSOCIATES, LTD.

By: _____     SEC
          (Name)                                              (Title)

Iris Andino

Multistate Note Allonge

# Allonge to Mortgage Note

BofA loan number: ███████████

Allonge to one certain Mortgage Note Dated: August 11, 2005

Executed By: Aaron Cohen

Original Amount: **$ 359, 650.00**

Property Address:

14 Beaver Dan Road, Pomona, New York 10970

Pay to the Order of:

Without Recourse:
**Bank of America, N.A., successor by merger to Countrywide Bank, N.A., fka Countrywide Bank, FSB, fka Countrywide Bank, N.A., fka Countrywide Document Custody Services, a Division of Treasury Bank, N.A.**

By: _____

Name: Jennie Stephens
Title: AVP

(Page 1 of 47)

Ed Gorman, County Clerk
1 South Main St Ste 100
New City, NY 10956
(845) 638-5221

# Rockland County Clerk Recording Cover Sheet

**Received From :**
LAND TITLE ASSOCIATES
1979 MARCUS AVE
LAKE SUCCESS NY 11042

**Return To :**
STERLING EMPIRE FUNDING ASSOC LTD
2307 EASTCHESTER RD
BRONX NY 10469

**First GRANTOR**
COHEN, AARON

**First GRANTEE**
STERLING EMPIRE FUNDING ASSOCIATES LTD

Index Type : Land Records

Instr Number : 2005-00045242

Book :          Page :

Type of Instrument : Mortgage
Type of Transaction : Mtg Type B

Recording Fee :          $81.00

The Property affected by this instrument is situated in Ramapo, in the
County of Rockland, New York

Recording Pages :          18

### Mortgage Taxes

| | |
|---|---|
| Property Located : | Ramapo |
| Serial Number : | CW7836 |
| Mortgage Amount : | $359,650.00 |
| Basic Tax : | $1,798.00 |
| Local Tax : | $899.00 |
| Additional Tax : | $1,048.80 |
| Transportation Auth Tax : | $899.00 |
| SONYMA : | $0.00 |
| Total : | $4,644.80 |

State of New York

County of Rockland

I hereby certify that the within and foregoing was
recorded in the Clerk's office for Rockland
County, New York

On (Recorded Date) : 08/25/2005

At (Recorded Time) : 10:44:12 AM

Total Fees :          $4,725.80

Doc ID - 013271910018

*Edward Gorman*

Ed Gorman, County Clerk



This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: COUNTER1  Printed On : 08/25/2005 At : 10:46:49AM

File Number : 2005-00045242  Page 1

(Page 2 of 47)

Mortgage Recording Tax:

After Recording Return To:
STERLING EMPIRE FUNDING ASSOCIATES, LTD.
2307 EASTCHESTER ROAD
BRONX, NEW YORK 10469
Loan Number: ▓▓▓▓▓▓▓

——————————— [Space Above This Line For Recording Data] ———————————

## MORTGAGE

MIN: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated AUGUST 11, 2005            , together with
all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." AARON COHEN  and   EMILY COHEN

whose address is 15 SHERRI LANE, WESLEY HILLS, NEW YORK 10977

                                                            sometimes will be called "Borrower"
and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely
as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender." STERLING EMPIRE FUNDING ASSOCIATES, LTD., A NEW YORK
CORPORATION
will be called "Lender." Lender is a corporation or association which exists under the laws of
NEW YORK
Lender's address is 2307 EASTCHESTER ROAD, BRONX, NEW YORK 10469

(E) "Note." The note signed by Borrower and dated   AUGUST 11, 2005            , will be called the
"Note." The Note shows that I owe Lender THREE HUNDRED FIFTY-NINE THOUSAND SIX
HUNDRED FIFTY AND 00/100                           Dollars (U.S. $ 359,650.00             )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to
pay the debt in full by   SEPTEMBER 1, 2035        .
(F) "Property." The property that is described below in the section titled "Description of the Property," will be
called the "Property."

Section:                  Block:                  Lot(s)/Unit No(s).:

Borrower Initials: _EC_  _al_ _____  _____  _____  _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS       DocMagic ☎800-649-1362
Form 3033 01/01                              Page 1 of 16                          www.docmagic.com

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider         ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider   ☐ Other(s) [specify]
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation; or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

Borrower Initials: _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eForms  800-649-1362
Form 3033 01/01                          Page 2 of 16                               www.docmagic.com

(Page 4 of 47)

Land Title Associates
*Issued on behalf of Old Republic National Title Insurance Company*

Title No.: *LTA1195-05*

## SCHEDULE A
Legal Description

All that certain plot, pieces or parcel of land situate, lying and being in the Village of Pomona, Town of Ramapo, County of Rockland and State of New York, known and designated as Lot 30 in Block A as Shown on a certain map entitled "Amended Subdivision of Property for Gegerson Heights- Dennis Hills, Village of Pomona, Rockland County, New York" made by Atzl & Scatassa Associates, P.C., dated March 28, 1974 and last revised March 8, 1975, which map was filed in the Rockland County Clerk's Office on June 18, 1975 in Book 88 of Maps at Page 67-68 as Map #4638.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

> (A) To exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
>
> (B) To take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 14 BEAVER DAM ROAD

|  | [Street] |  |  |
|---|---|---|---|
| POMONA | | , New York | 10970 |
| [City, Town or Village] | | | [Zip Code] |

This Property is in ROCKLAND County. It has the following legal description: SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

Borrower Initials: _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01
Page 3 of 16
DocMagic eForms 800.649.1362
www.docmagic.com

File Number: 2005-00045242   Seq: 5

Case 2:15-cv-06828-LDW-SIL   Document 31   Filed 05/23/16   Page 28 of 72 PageID #: 280

## PLAIN LANGUAGE SECURITY INSTRUMENT
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS
I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full. Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. **Monthly Payments For Taxes And Insurance.**
(a) **Borrower's Obligations.**
I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property,

Borrower Initials: _____ _____

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT · MERS
Form 3033 01/01
Page 4 of 16
DocMagic *eForms* 800-649-1362
www.docmagic.com

(Page 7 of 47)

flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance.  Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1)  The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property.  Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
(2)  The leasehold payments or ground rents on the Property (if any);
(3)  The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
(4)  The premium for Mortgage Insurance (if any);
(5)  The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
(6)  If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items.  The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise.  I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds."  I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items.  Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time.  Any such waiver must be in writing.  In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require.  My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid.  Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may  at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA.  Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold.  This total amount cannot be more than the maximum amount a lender could require under RESPA.  If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b)  Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank.  If Lender is such a savings or banking institution, Lender may hold the Escrow Funds.  Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law.  Lender will give to me, without charge, an annual accounting of the Escrow Funds.  That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills.  However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge.  Lender will not be required to pay me any

Borrower Initials: _____  _____  _____  _____  _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01
Page 5 of 16

DocMagic *eforms* 800-649-1362
www.docmagic.com

Interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.   **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.   **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense.  Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth

Borrower initials: _____

NEW YORK- Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01
Page 6 of 18

DocMagic eForms 800-649-1362
www.docmagic.com

in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Borrower's Obligations to Occupy The Property.  I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.   Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

[a]  Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss

Borrower Initials: _____

or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the Insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8.    Borrower's Loan Application. If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9.    Lender's Right to Protect Its Rights in The Property. If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10.    Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage

Borrower Initials: _____

Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be

Borrower Initials: _____ _____ _____ _____ _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                    Page 9 of 16                    DocMagic eForms 800-649-1362
www.docmagic.com

File Number: 2005-00045242    Seq: 11

reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property, (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Borrower Initials: _____  _____  _____  _____  _____  _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                          Page 10 of 18                          DocMagic eForms 800 649-1362
                                                                                www.docmagic.com

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights if the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will

Borrower Initials: _____   _____

begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even If Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered

Borrower Initials: _CPA_ _Cc_

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01
Page 12 of 16
DocMagic eForms 800-649-1362
www.docmagic.com

Case 2:15-cv-06828-LDW-SIL  Document 31  Filed 05/23/16  Page 37 of 72 PageID #: 289

hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

Borrower Initials:

(Page 16 of 47)

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have: and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied   I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24

25. Borrower's Statement Regarding the Property {check box as applicable}.

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing. in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

Borrower Initials: _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01
Page 14 of 16
DocMagic 800-649-1362
www.docmagic.com

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)       _____ (Seal)
AARON COHEN            -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
EMILY COHEN            -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
                       -Borrower                              -Borrower

Witness:                              Witness:

_____               _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic €ℱℴℛℳℰ 800-649-1362
Form 3033 01/01                        Page 15 of 16                             www.docmagic.com

(Page 18 of 47)

State of New York                )
                                 ) ss.
County of  ROCKLAND              )

On the     11    day of   August       , In the year  2005  , before me,
the undersigned, personally appeared AARON COHEN   and   Emily  Cohen

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

_____
                     Notary Public State of New York

_____
                              Print or Type Name

(Seal, if any)                    My commission expires:

Tax Map Information No.:
                          ISAAC S. SCHEINER
                          Notary Public, State of New York
                          No. 025C3049209
                          Qualified in Rockland County
                          Commission Expires Oct. 10, 2008

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3033 01/01                         Page 16 of 16          DocMagic eForms 800 649 1362
                                                               www.docmagic.com

(Page 23 of 47)

Paul Piperato, County Clerk
1 South Main St Ste 100
New City, NY 10956
(845) 638-5221

## Rockland County Clerk Recording Cover Sheet

Received From :
PRIME TITLE SEARCH LLC
410 NEW YORK AVENUE
HUNTINGTON, NY 11743

Return To :
STEVEN J BAUM PC        SW
220 NORTHPOINTE PKWY
STE B
AMHERST, NY 14228

First GRANTOR

STERLING EMPIRE FUNDING ASSOCIATES LTD

First GRANTEE

BAC HOME LOANS SERVICING LP

Index Type : Land Records

Instr Number : 2010-00020560        Orig Instr #: 2005-00045242

Book :        Page :

Type of Instrument : Assignment Of Mortgage
Type of Transaction : A/Mtg,R/Mtg

Recording Fee :        $50.50

Recording Pages :        2

### Recorded Information

State of New York

County of Rockland

I hereby certify that the within and foregoing was
recorded in the Clerk's office for Rockland County,
New York

On (Recorded Date) : 06/09/2010

At (Recorded Time) : 5:05:29 PM

Doc ID - 020834940002

Paul Piperato, County Clerk

This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: PM Printed On : 06/11/2010   At : 5:06:15PM

## ASSIGNMENT OF MORTGAGE

Original Lender: Mortgage Electronic Registration Systems, Inc. as nominee for Sterling Empire Funding Associates, Ltd. its successors and assigns

Know that,

Mortgage Electronic Registration Systems, Inc. as nominee for Sterling Empire Funding Associates, Ltd. its successors and assigns, 3300 SW 34th Avenue Suite 101, Ocala, FL 34474, assignor,

in consideration of the sum of One and No/100th Dollars and other good valuable consideration dollars, paid by

BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP, 475 Crosspoint Parkway, Getzville, NY 14068, assignee

hereby assigns unto the assignee, a certain mortgage made by AARON COHEN and EMILY COHEN, given to secure payment of the sum of Three hundred and fifty nine thousand six hundred and fifty dollars ($359,650.00) and interest, dated the 11th day of August, 2005, recorded on the 25th day of August, 2005, in the office of the Clerk of the County of Rockland, at Instrument No. 2005-00045242,

covering premises 14 BEAVER DAM ROAD, POMONA, NY 10970, SBL #32.16-2-21,

together with the Assignor's beneficial interest under the Mortgage, and the moneys due and to grow due thereon with the interest,

This said mortgage has not been otherwise assigned of record.

*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

*IN WITNESS WHEREOF,* the Assignor has caused these presents to be signed by its duly authorized officer this 1st day of June, 2010.

*IN PRESENCE OF*

Mortgage Electronic Registration Systems, Inc. as nominee for Sterling Empire Funding Associates, Ltd. its successors and assigns

BY: _____
Elpiniki M. Bechakas
Assistant Secretary and Vice President

State of New York
County of Erie   ss:
On the 1st day of June in the year 2010 before me, the undersigned, a notary public in and for said state, personally appeared Elpiniki M. Bechakas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Kimberly K. Dexheo
NOTARY PUBLIC STATE OF NEW YORK
Qualified in Erie County
Lic. #01DO6219703
My Commission Expires 3/29/20_14

86694

Steven J. Baum, PC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

Page 1 of 3

**Paul Piperato, County Clerk**
1 South Main St., Ste. 100
New City, NY 10956
(845) 638-5070

## Rockland County Clerk Recording Cover Sheet

Received From :
PARAMOUNT LAND INC
584 MAIN ST
ISLIP, NY 11751

Return To :
PARAMOUNT LAND INC
584 MAIN ST
ISL P, NY 11751

Method Returned : ERECORDING

**First GRANTOR**

BANK OF AMERICA NA

**First GRANTEE**

GREEN TREE SERVICING LLC

Index Type : Land Records

**Instr Number : 2014-00010014**            **Orig Instr #: 2005-00045242**
**Book :**                    **Page :**

Type of Instrument : Assignment Of Mortgage
Type of Transaction : Asmt-Release Mtg
Recording Fee:              $55.50

Recording Pages :            3

### Recorded Information

State of New York

County of Rockland

I hereby certify that the within and foregoing was
recorded in the Clerk's office for Rockland County,
New York

On (Recorded Date) : 04/16/2014

At (Recorded Time) : 4.26.00 PM

Paul Piperato, County Clerk

Page 2 of 3

Recording Requested By:
**Bank of America**
Prepared By: **Noor Sadruddin**

When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

Doc ID#
Property Address:
14 Beaver Dam Rd
Pomona, NY 10970-3204
Property Location:
Village of POMONA
NY0-AM 21300026 6/10/2013 GTBS114

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing LP, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto GREEN TREE SERVICING LLC whose address is 7360 S. KYRENE ROAD, TEMPE, AZ 85283 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Original Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR STERLING EMPIRE FUNDING ASSOCIATES, LTD., A NEW YORK CORPORATION |
| Made By: | AARON COHEN AND EMILY COHEN |
| Date of Mortgage: | 8/11/2005 |
| Original Loan Amount: | $359,650.00 |
| Section: 032.016 Lot: 021 Block: V | |

Recorded in Rockland County, NY on: 8/25/2005, book N/A and instrument number 2005-00045242

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:
Assigned From: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR STERLING EMPIRE FUNDING ASSOCIATES, LTD., ITS SUCCESSORS AND ASSIGNS
Assigned To: BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP
Recording Date: 6/9/2010 Book/Liber: Page: Instrument Number: 2010-00020560

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
**JUN 10 2013**

Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing LP

By: _____
Wanda E. Stevenson
Assistant Vice President

Page 3 of 3

State of TX, County of _DALLAS_

On _6-10-13_, before me, _REBECCA STANCZAK_, a Notary Public, personally
appeared _Wanda E Swanson_, _Assistant Vice President_ of Bank of
America, N.A., successor by merger to BAC Home Loans Servicing, LP, fka Countrywide Home Loans
Servicing, LP personally known to me to be the person(s) whose name(s) is/are subscribed to the within document
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.

_Rebecca Stanczak_
Notary Public: _REBECCA STANCZAK_
My Commission Expires: _10/31/2015_

REBECCA STANCZAK
NOTARY PUBLIC STATE OF TEXAS
10-31-2015

DocID#

**90-Day Notice**

green tree®

Date of Notice: September 22, 2014                    Certified Mail Receipt No. 7013 1710 0002 0421 7037

AARON COHEN                                           Green Tree Servicing LLC
1315 DIXWELL AVE                                      1400 Turbine Drive
HAMDEN CT 06514                                       Rapid City, SD 57703
                                                     (800) 643-0202

Account No: ███████████            Creditor: Green Tree Servicing LLC

Brief identification of credit transaction:  Home Equity Account

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of September 22, 2014, your home is 1847 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $266,300.50 dollars by 12/24/2014.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling.  You should consider contacting one of these agencies immediately.  These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at 1-800-643-0202 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 1-800-342-3736 or visit the Department's website at http://www.dfs.ny.gov.

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Government Approved Housing Counseling Agencies in your region:

1.   Housing Action Council
     55 South Broadway
     Tarrytown, NY 10591
     914-332-4144

2.   Rockland Housing Action Coalition
     120-126 North Main St., Annex-First Floor
     New City, NY 10956
     845-708-5799

3.   Hudson River Housing
     291 Mill St.
     Poughkeepsie, NY 12601
     845-454-9288

4.   Community Housing Innovations, Inc.
     190 East Post Rd., Suite 401
     White Plains NY 10601
     914-683-1010

5.   Human Development Services of Westchester, Inc.
     28 Adee St. Port
     Chester, NY 10573
     914-939-2005

**90-Day Notice**

green tree®

Date of Notice: September 22, 2014

Certified Mail Receipt No. 7013 1710 0002 0421 7044

AARON COHEN
14 BEAVER DAM RD
POMONA NY 10970

Green Tree Servicing LLC
1400 Turbine Drive
Rapid City, SD 57703
(800) 643-0202

Account No: ▮▮▮▮▮▮▮

Creditor: Green Tree Servicing LLC

Brief identification of credit transaction:  Home Equity Account

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of September 22, 2014, your home is 1847 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $266,300.50 dollars by 12/24/2014.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling.  You should consider contacting one of these agencies immediately.  These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at 1-800-643-0202 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 1-800-342-3736 or visit the Department's website at http://www.dfs.ny.gov.

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Government Approved Housing Counseling Agencies in your region:

1.    Housing Action Council
      55 South Broadway
      Tarrytown, NY 10591
      914-332-4144

2.    Rockland Housing Action Coalition
      120-126 North Main St., Annex-First Floor
      New City, NY 10956
      845-708-5799

3.    Hudson River Housing
      291 Mill St.
      Poughkeepsie, NY 12601
      845-454-9288

4.    Community Housing Innovations, Inc.
      190 East Post Rd., Suite 401
      White Plains NY 10601
      914-683-1010

5.    Human Development Services of Westchester, Inc.
      28 Adee St. Port
      Chester, NY 10573
      914-939-2005

**90-Day Notice**

green tree®

Date of Notice: September 22, 2014

Certified Mail Receipt No. 7013 1710 0002 0421 7051

Emily Cohen
1315 DIXWELL AVE
HAMDEN CT 06514

Green Tree Servicing LLC
1400 Turbine Drive
Rapid City, SD 57703
(800) 643-0202

Account No: ███████████        Creditor: Green Tree Servicing LLC

Brief identification of credit transaction:  Home Equity Account

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of September 22, 2014, your home is 1847 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $266,300.50 dollars by 12/24/2014.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling.  You should consider contacting one of these agencies immediately.  These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at 1-800-643-0202 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 1-800-342-3736 or visit the Department's website at http://www.dfs.ny.gov.

New York and NYC Mortgage 90-Day Notice, 11/11/2013

NTC-139

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Government Approved Housing Counseling Agencies in your region:

1.    Housing Action Council
      55 South Broadway
      Tarrytown, NY 10591
      914-332-4144

2.    Rockland Housing Action Coalition
      120-126 North Main St., Annex-First Floor
      New City, NY 10956
      845-708-5799

3.    Hudson River Housing
      291 Mill St.
      Poughkeepsie, NY 12601
      845-454-9288

4.    Community Housing Innovations, Inc.
      190 East Post Rd., Suite 401
      White Plains NY 10601
      914-683-1010

5.    Human Development Services of Westchester, Inc.
      28 Adee St. Port
      Chester, NY 10573
      914-939-2005

**90-Day Notice**

# green tree

Date of Notice: September 22, 2014

Certified Mail Receipt No. 7013 1710 0002 0421 7068

Emily Cohen
14 BEAVER DAM RD
POMONA NY 10970

Green Tree Servicing LLC
1400 Turbine Drive
Rapid City, SD 57703
(800) 643-0202

Account No: ███████

Creditor: Green Tree Servicing LLC

Brief identification of credit transaction:  Home Equity Account

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of September 22, 2014, your home is 1847 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $266,300.50 dollars by 12/24/2014.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling.  You should consider contacting one of these agencies immediately.  These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at 1-800-643-0202 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 1-800-342-3736 or visit the Department's website at http://www.dfs.ny.gov.

New York and NYC Mortgage 90-Day Notice, 11/11/2013

NTC-139

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Government Approved Housing Counseling Agencies in your region:

1.    Housing Action Council
      55 South Broadway
      Tarrytown, NY 10591
      914-332-4144

2.    Rockland Housing Action Coalition
      120-126 North Main St., Annex-First Floor
      New City, NY 10956
      845-708-5799

3.    Hudson River Housing
      291 Mill St.
      Poughkeepsie, NY 12601
      845-454-9288

4.    Community Housing Innovations, Inc.
      190 East Post Rd., Suite 401
      White Plains NY 10601
      914-683-1010

5.    Human Development Services of Westchester, Inc.
      28 Adee St. Port
      Chester, NY 10573
      914-939-2005

**90-Day Notice**

green tree

Date of Notice: September 22, 2014

AARON COHEN
1315 DIXWELL AVE
HAMDEN CT 06514

Green Tree Servicing LLC
1400 Turbine Drive
Rapid City, SD 57703
(800) 643-0202

Account No: ███████                    Creditor: Green Tree Servicing LLC

Brief identification of credit transaction:  Home Equity Account

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of September 22, 2014, your home is 1847 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $266,300.50 dollars by 12/24/2014.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling.  You should consider contacting one of these agencies immediately.  These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at 1-800-643-0202 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 1-800-342-3736 or visit the Department's website at http://www.dfs.ny.gov.

New York and NYC Mortgage 90-Day Notice, 11/11/2013

NTC-139

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Government Approved Housing Counseling Agencies in your region:

1.    Housing Action Council
      55 South Broadway
      Tarrytown, NY 10591
      914-332-4144

2.    Rockland Housing Action Coalition
      120-126 North Main St., Annex-First Floor
      New City, NY 10956
      845-708-5799

3.    Hudson River Housing
      291 Mill St.
      Poughkeepsie, NY 12601
      845-454-9288

4.    Community Housing Innovations, Inc.
      190 East Post Rd., Suite 401
      White Plains NY 10601
      914-683-1010

5.    Human Development Services of Westchester, Inc.
      28 Adee St. Port
      Chester, NY 10573
      914-939-2005

**90-Day Notice**

green tree®

Date of Notice: September 22, 2014

AARON COHEN
14 BEAVER DAM RD
POMONA NY 10970

Green Tree Servicing LLC
1400 Turbine Drive
Rapid City, SD 57703
(800) 643-0202

Account No: ▇▇▇▇▇▇▇▇            Creditor: Green Tree Servicing LLC

Brief identification of credit transaction:  Home Equity Account

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of September 22, 2014, your home is 1847 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $266,300.50 dollars by 12/24/2014.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling.  You should consider contacting one of these agencies immediately.  These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at 1-800-643-0202 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 1-800-342-3736 or visit the Department's website at http://www.dfs.ny.gov.

New York and NYC Mortgage 90-Day Notice, 11/11/2013

NTC-139

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Government Approved Housing Counseling Agencies in your region:

1.      Housing Action Council
        55 South Broadway
        Tarrytown, NY 10591
        914-332-4144

2.      Rockland Housing Action Coalition
        120-126 North Main St., Annex-First Floor
        New City, NY 10956
        845-708-5799

3.      Hudson River Housing
        291 Mill St.
        Poughkeepsie, NY 12601
        845-454-9288

4.      Community Housing Innovations, Inc.
        190 East Post Rd., Suite 401
        White Plains NY 10601
        914-683-1010

5.      Human Development Services of Westchester, Inc.
        28 Adee St. Port
        Chester, NY 10573
        914-939-2005

**90-Day Notice**

green tree®

Date of Notice: September 22, 2014

Emily Cohen
1315 DIXWELL AVE
HAMDEN CT 06514

Green Tree Servicing LLC
1400 Turbine Drive
Rapid City, SD 57703
(800) 643-0202

Account No: ███████████                    Creditor: Green Tree Servicing LLC

Brief identification of credit transaction: Home Equity Account

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of September 22, 2014, your home is 1847 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $266,300.50 dollars by 12/24/2014.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling.  You should consider contacting one of these agencies immediately.  These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at 1-800-643-0202 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 1-800-342-3736 or visit the Department's website at http://www.dfs.ny.gov.

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Government Approved Housing Counseling Agencies in your region:

1.      Housing Action Council
        55 South Broadway
        Tarrytown, NY 10591
        914-332-4144

2.      Rockland Housing Action Coalition
        120-126 North Main St., Annex-First Floor
        New City, NY 10956
        845-708-5799

3.      Hudson River Housing
        291 Mill St.
        Poughkeepsie, NY 12601
        845-454-9288

4.      Community Housing Innovations, Inc.
        190 East Post Rd., Suite 401
        White Plains NY 10601
        914-683-1010

5.      Human Development Services of Westchester, Inc.
        28 Adee St. Port
        Chester, NY 10573
        914-939-2005

**90-Day Notice**

# green tree®

Date of Notice: September 22, 2014

Emily Cohen
14 BEAVER DAM RD
POMONA NY 10970

Green Tree Servicing LLC
1400 Turbine Drive
Rapid City, SD 57703
(800) 643-0202

Account No: ▇▇▇▇▇▇▇                Creditor: Green Tree Servicing LLC

Brief identification of credit transaction:  Home Equity Account

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY.

As of September 22, 2014, your home is 1847 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $266,300.50 dollars by 12/24/2014.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling.  You should consider contacting one of these agencies immediately.  These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at 1-800-643-0202 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at 1-800-342-3736 or visit the Department's website at http://www.dfs.ny.gov.

New York and NYC Mortgage 90-Day Notice, 11/11/2013                                NTC-139

This communication is from a debt collector.  It is an attempt to collect a debt, and any information obtained will be used for that purpose.

Government Approved Housing Counseling Agencies in your region:

1.    Housing Action Council
55 South Broadway
Tarrytown, NY 10591
914-332-4144

2.    Rockland Housing Action Coalition
120-126 North Main St., Annex-First Floor
New City, NY 10956
845-708-5799

3.    Hudson River Housing
291 Mill St.
Poughkeepsie, NY 12601
845-454-9288

4.    Community Housing Innovations, Inc.
190 East Post Rd., Suite 401
White Plains NY 10601
914-683-1010

5.    Human Development Services of Westchester, Inc.
28 Adee St. Port
Chester, NY 10573
914-939-2005

Index No.:


SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
-----------------------------------------------------------------------
GREEN TREE SERVICING LLC,


                                   Plaintiff,


        -against-



AARON COHEN, EMILY COHEN, et al.,


                                   Defendants.
-----------------------------------------------------------------------


**SUMMONS AND COMPLAINT**


**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
Main Office 51 E Bethpage Road
Plainview, NY 11803
516-741-2585
516-622-9434
RR&A: 12-024432

# EXHIBIT B

FILED: ROCKLAND COUNTY CLERK 03/12/2015 11:16 AM INDEX NO. 031030/2015

NYSCEF DOC. NO. 1    Case 2:15-cv-06828-LDW-SIL    Document 31    Filed 05/23/16    Page 64 of 72 PageID #: 316    RECEIVED NYSCEF: 03/12/2015

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
----------------------------------------------------------------x

GREEN TREE SERVICING LLC

                                    Plaintiff(s),

v.


AARON COHEN; EMILY COHEN; BEAVER DAM
TRUST; NATIONAL CITY BANK; "JOHN DOES"
and "JANE DOES", said names being fictitious, parties
intended being possible tenants or occupants of
premises and corporations, other entities or persons
who have, claim, or may claim, a lien against, or other
interest in, the premises,

                                    Defendant(s).
----------------------------------------------------------------x

Index No.:


CERTIFICATE OF MERIT
PURSUANT TO CPLR 3012-b


Mortgaged Premise Address:
14 BEAVER DAM ROAD, POMONA,
NY 10970

1.      I am an attorney at law duly licensed to practice in the State of New York, and am affiliated with the law firm of ROSICKI, ROSICKI & ASSOCIATES, P.C., attorney for plaintiff GREEN TREE SERVICING LLC in this action.

2.      I have reviewed the facts of this case and reviewed pertinent documents, including the mortgage, security agreement and note or bond underlying the mortgage executed by defendant, all instruments of assignment (if any), and all other instruments of indebtedness including any modification, extension, and consolidation.

3.      I have consulted about the facts of this case with the following representatives of plaintiff:

| Name | Title |
|------|-------|
| Leslie Grisham | Foreclosure Specialist |

4.      Upon this review and consultation, to the best of my knowledge, information, and belief, I certify that there is a reasonable basis for the commencement of this action, and that plaintiff is the creditor entitled to enforce rights under these documents.

5.      Listed in Exhibit A and attached hereto are copies of the following documents not otherwise included as attachments to the summons and complaint: the mortgage, security agreement and note or bond underlying the mortgage executed by the defendant; all instruments of assignment (if any); and any other instrument of indebtedness, including any modification, extension, and consolidation. (Check box if no documents are attached in Exhibit A: ☑.)

6.      Listed in Exhibit B and attached hereto are supplemental affidavits attesting that certain

documents as described in paragraph 5 supra are lost, whether by destruction, theft, or otherwise. (Check box if no documents are attached in Exhibit B: ☑ .)

7.     I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130.

Dated: March 11, 2015

Shanna J. Black, Esq.

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
-------------------------------------------------------------------------------
 GREEN TREE SERVICING LLC,

                                                      Plaintiff,

                -against-
 AARON COHEN EMILY COHEN , et al.,

                                              Defendant(s).

-------------------------------------------------------------------------------


_____

**CERTIFICATE OF MERIT PURSUANT TO CPLR 3012-b**

_____


**ROSICKI, ROSICKI & ASSOCIATES, P.C.**

By: _____
            Shanna J. Black, Esq.
            Attorneys for Plaintiff
        Main Office 51 E Bethpage Road
            Plainview, NY 11803
              516-741-2585
              516-622-9434
            RR&A: 12-024432

Exhibit A

Please see attached copies of the Loan Documents
(List Documents Attached)

Exhibit B

Please see attached Supplemental Affidavit
**(List Affidavit of Lost/Missing Documents)**

# EXHIBIT C

INDEX NO. 031030/2015

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840 (7/2012)

| **For Court Clerk Use Only:** |
| --- |
| IAS Entry DATE |
| |
| Judge Assigned |
| |
| RJI Date |

**SUPREME COURT,**      **COUNTY OF ROCKLAND**

Index No: <u>031030/2015</u>      Date index Issued: <u>03/12/2015</u>

**CAPTION:** Enter the complete case caption. Do not use et al or et ano. If more space is required, attach a caption rider sheet.

GREEN TREE SERVICING LLC

INDEX NO. 031030/2015

**Plaintiff(s)/Petitioner(s)**

-against-

AARON COHEN; EMILY COHEN; BEAVER DAM TRUST; NATIONAL CITY BANK; "JOHN DOES" AND "JANE DOES", said names being fictitious, parties intended being possible tenants or occupants of premises and corporations, other entities or persons who have, claim, or may claim, a lien against, or other interest in, the premises,

**Defendant(s)/Respondent(s)**

## NATURE OF ACTION OR PROCEEDING:    Check ONE box only and specify where indicated.

**MATRIMONIAL**

○ Contested
NOTE: For all Matrimonial actions where the parties have children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum. For Uncontested Matrimonial actions, use RJI form UD-13.

**TORTS**

○ Asbestos
○ Breast Implant
○ Environmental: _____
(specify)

○ Medical, Dental, or Podiatric Malpractice
○ Motor Vehicle
○ Products Liability: _____
(specify)
○ Other Negligence: _____
(specify)
○ Other Professional
Malpractice: _____
(specify)
○ Other Tort: _____
(specify)

**COMMERCIAL**

○ Business Entity (including corporations, partnerships, LLCs, etc.)
○ Contract
○ Insurance (where insurer is a party, except arbitration)
○ UCC (including sales, negotiable instruments)
○ Other
○ Commercial: _____
(specify)

**NOTE:** For Commercial Division assignment requests [22 NYCRR ' 202.70(d)], complete and attach the **COMMERCIAL DIV RJI Addendum.**

**REAL PROPERTY:**    How many properties does the application include?

○ Condemnation
⊗ Mortgage Foreclosure
Property Address: <u>14 BEAVER DAM ROAD, POMONA, NY 10970</u>
         Street Address     City     State     Zip
**NOTE:** For Foreclosure actions involving a one- to four-family, owner-occupied, residential property, or an owner-occupied condominium, complete and attach the **FORECLOSURE RJI Addendum.**
○ Tax Certiorari - Section: _____ Block: _____ Lot: _____
○ TAX FORECLOSURE
○ Other Real Property: _____
(specify)

## OTHER MATTERS

○ Certificate of Incorporation/Dissolution [see **NOTE** under Commercial]
○ Emergency Medical Treatment
○ Habeas Corpus
○ Local Court Appeal
○ Mechanic's Lien
○ Name Change
○ Pistol Permit Revocation Hearing
○ Sale or Finance of Religious/Not-for-Profit Property
○ Other: _____
(specify)

## SPECIAL PROCEEDINGS

○ CPLR Article 75 (Arbitration) [see NOTE under Commercial]
○ CPLR Article 78 (Body or Officer)
○ Election Law
○ MHL Article 9.60 (Kendra's Law)
○ MHL Article 10 (Sex Offender Confinement-Initial)
○ MHL Article 10 (Sex Offender Confinement-Review)
○ MHL Article 81 (Guardianship)
○ Other Mental Hygiene: _____
(specify)

○ Other Special Proceeding: _____
(specify)

## STATUS OF ACTION OR PROCEEDING:    Answer YES or NO for EVERY question AND enter additional information where indicated.

| | YES | NO | |
| --- | --- | --- | --- |
| Has a summons and complaint or summons w/notice been filed? | ⊗ | ○ | If yes, date filed: <u>03/12/2015</u> _____ |
| Has a summons and complaint or summons w/notice been served? | ⊗ | ○ | If yes, date served: 03/18/2015 _____ |
| Is this action/proceeding being filed post-judgment? | ○ | ⊗ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION:**    Check ONE box only AND enter additional information where indicated.

o Infant's Compromise
o Note of Issue and/or Certificate of Readiness
o Notice of Medical, Dental, or Podiatric Malpractice     Date Issue Joined: _____
o Notice of Motion                          Relief Sought: _____     Return Date: _____
o Notice of Petition                        Relief Sought: _____     Return Date: _____
o Order to Show Cause                        Relief Sought: _____     Return Date: _____
o Other Ex Parte Application                 Relief Sought: _____
o Poor Person Application
o Request for Preliminary Conference
⊗ Residential Mortgage Foreclosure Settlement Conference
o Writ of Habeas Corpus
o Other (specify):_____

**RELATED CASES:**   List any related actions. For Matrimonial actions, include any related criminal and/or Family Court cases.
If additional space is required, complete and attach the RJI Addendum. If none, leave blank.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES:**   If additional space is required, complete and attach the **RJI Addendum.**
For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in "Attorneys" space.

| Un-Rep | Parties: List parties in caption order and indicate party role(s) (e.g. defendant, 3rd-party plaintiff). | Attorneys: Provide name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case. | Issue Joined (Y/N): | Insurance Carrier(s): |
|---|---|---|---|---|
| [ ] | GREEN TREE SERVICING LLC<br><br>Primary Role<br>Plaintiff<br>Secondary Role (if any):<br>Plaintiff | ROSICKI, ROSICKI & ASSOCIATES, P.C<br>Firm Name<br><br>26 Harvester Avenue    Batavia    NY    14020<br>Street address    City    State    Zip<br><br>Phone _585-815-0288_    Fax 585-815-0299    e-mail attorneyconf@rosicki.com | O YES<br><br>O NO |  |
| X | COHEN, AARON<br><br>Primary Role<br>Defendant<br>Secondary Role (if any):<br>Defendant | COHEN, AARON<br><br>14 BEAVER DAM ROAD, POMONA, NY 10970<br><br>Street address    City    State    Zip<br><br>Phone    Fax    e-mail | O YES<br><br>O NO |  |
| X | COHEN, EMILY<br><br>Primary Role<br>Defendant<br>Secondary Role (if any):<br>Defendant | COHEN, EMILY<br>14 BEAVER DAM ROAD, POMONA, NY 10970<br><br>Street address    City    State    Zip<br><br>Phone    Fax    e-mail | O YES<br><br>O NO |  |

I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND
HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN
FILED IN THIS ACTION OR PROCEEDING.

Dated: __03/26/2015__

H. Lauren Williams, Esq.
Signature

5295704                                                    H. Lauren Williams

**ATTORNEY REGISTRATION NUMBER**                          **PRINT OR TYPE NAME**

FORECLOSURE Request for Judicial Intervention Addendum

Supreme ___ COURT,   COUNTY OF Rockland ___   Index No: 031030/2015 ___

**Instructions**

For use in ALL mortgage foreclosure actions where the property is: (check if applicable)

If # 1 or # 2 is applicable:

⊗   1. A one- to four-family owner-occupied residential property, or

○   2. An owner-occupied condominium.

- Select "Residential Mortgage Foreclosure Settlement Conference" as the Nature of Judicial Intervention on the RJI
- Identify the Mortgage Servicer.
- The Defendant/Respondent Information section below MUST be completed for all defendants and attached to the RJI.

Mortgage Servicer: Green Tree
Servicing LLC

**DEFENDANT/RESPONDENT INFORMATION: List parties in caption order. Attach additional forms as necessary.**

1. Last Name: COHEN     First Name: AARON

Primary Phone: ___     Secondary Phone: ___

Address: 14 BEAVER DAM ROAD, POMONA, NY 1097014

(Street Address) ___     (City) ___     (State) ___     (Zip) ___     e-mail: ___

90-day Notice [RPAPL § 1304(1)] mailed on: ___     09/22/2014

Comments: ___

2. Last Name: COHEN     First Name: EMILY

Primary Phone: ___     Secondary Phone: ___

Address: 14 BEAVER DAM ROAD, POMONA, NY 10970

(Street Address) ___     (City) ___     (State) ___     (Zip) ___     e-mail: ___

90-day Notice [RPAPL § 1304(1)] mailed on: 09/22/2014

Comments: ___

**ATTENTION:** Proof of service must be filed with this RJI for each defendant upon whom a summons and complaint or summons with notice has been served. [CPLR § 3408]